TALBOT'S, INC., an Alaska corporation,
Appellant,

v.

CESSNUN ENTERPRISES, INC., et al.,
Appellees.

No. 1735.

Supreme Court of Alaska.

Feb. 8, 1974.

George L. Gucker and W. C. Stump of Stump & Stump, Ketchikan, for appellant.

Edward G. King, Ziegler, Ziegler & Cloudy, Ketchikan, for appellees.

Edward A. Stahla, City Atty., Ketchikan, amicus curiae.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

OPINION

ERWIN, Justice.

This controversy centers upon an alleged easement across a tidelands parcel located in the City of Ketchikan. The original title was passed to the United States by the Treaty of Cession (1867).[1] In 1957, the United States passed title to the tidelands to the Territory of Alaska under the Tidelands Act.[2] While the federal government retained certain rights (navigational servitudes, eminent domain rights, etc.) the title granted to the Territory can only be described as a fee simple. The Act contained a restriction on alienation to the effect that *if* the land was to be disposed of the occupants thereof were to be given "preference rights" (undefined in the Act).[3] In 1963, in pursuance of the Tidelands Act and of Art. III, ch. 169, SLA 1959, as amended (AS 38.05.300–38.05.347), the State of Alaska granted title to the tidelands here contested to the City of Ketchikan, with the same restraint on alienation noted above (AS 38.05.320).

The City of Ketchikan instituted its tidelands disposition procedure by accepting applications for tidelands from January 2, 1964, until December 31, 1965. An integral part of this procedure was the adoption of the Tidelands Subdivision Plat which, pursuant to Ketchikan Ordinance 651, was approved after public hearings by the Planning Commission on February 11, 1964, and recorded February 28, 1964, as Plat No. 107, and on October 20, 1965, as Plat No. 107–C. This plat shows an easement

1. 15 Stat. 539. There were, of course, conditions to the passing of title but these dealt primarily with the Greek Oriental Church and did not affect the title to the land in question.

2. 48 U.S.C. § 455 et seq. (1957).

3. 48 U.S.C. § 455a(b).

appurtenant to the land then occupied by Alaska Packers Association, crossing the land occupied by Talbot's, Inc.

James Church, principal officer of appellant Talbot's, Inc., was a member of the Ketchikan Planning Commission prior to and during the approval by the Commission of the Tidelands Subdivision Plat. Hearings were held by the Commission and objections to the plat were heard. Mr. Church voted not to approve the plat. He claims that his opposition was due to the easement over Talbot's land shown on the plat. He was outvoted, and the plat was approved as amended. Church objected to the plat before both the Planning Commission and the City Council. He was aware of the procedures necessary to file formal protests concerning the plat. No formal protest has ever been filed by anyone with regard to the easement. Church was personally visited by the City Engineer, at which visit the easement was discussed. Church concluded that he felt he had received a hearing, and therefore did not file a protest to the easement, the plat, nor to the property deeded to Talbot's by the City.

Alaska Packers, predecessors in title to the appellees, acquired tidelands on July 21, 1964, pursuant to the Tidelands Subdivision Plat, which showed the easement across the appellant's property for Alaska Packers' use and enjoyment.

The appellant's deed, dated February 1, 1966, was issued pursuant to the Tidelands Subdivision Plat as recorded.

The appellees instituted this action on March 9, 1971, praying for a mandatory injunction requiring the appellant to remove obstructions from the easement area and restraining it from obstructing or unreasonably interfering with the appellees' rights of ingress and egress over the easement area. Trial without jury was held on December 1, 1971, ultimately resulting in the issuance of the injunction. This appeal followed.

We granted the motion of the City of Ketchikan to file a brief amicus curiae.

\* \* \*

We are called upon to decide four issues on this appeal: (1) what was the nature of the so-called "preference right" afforded appellant; (2) whether the city acted beyond its statutory competence in platting the easement; (3) whether the procedures employed by the city afforded appellant due process of law; and, (4) whether Talbot's waived its objections for failure to bring a timely appeal under the administrative provisions of the Act. There is, however, a threshold question which has been raised and which we must discuss before turning to these issues. The appellant claims that its interest in the tidelands, prior to statehood and the conveyance from the City, was a vested property right under the State Tidelands Act, which requires conveyance of the property held, since it is subject to a preference right. In other words, the occupants of tidelands were vested with *title* to their tidelands pursuant to federal and state law. The appellant being vested pursuant to the 1957 Tidelands Act, was vested with those lands prior to an actual conveyance from the City of Ketchikan, and no easement could be created unless eminent domain proceedings were instituted.

As authority for this position, appellant relies solely upon an opinion of the Attorney General of the State of Alaska [4] regarding whether the state could retain title to occupied tidelands lying offshore of cities for right-of-way purposes without eminent domain action being taken against the occupants. In that opinion, the history of the federal and state tidelands acts was discussed, and the conclusion of the Attorney General's Office was

> Accordingly, the occupants of tidelands lying offshore of cities have present vested property rights under the 1957 tidelands act which the state must recognize in acquiring right-of-ways for state

4. Op.Atty.Gen. No. 18, June 23, 1961.

roads. Before the state uses such lands the tideland occupants must be paid for the full value of the property they occupy.[5]

Thus the appellant concludes that it was incumbent upon the State of Alaska to bring eminent domain proceedings and to pay the full value of appellant's real property for the easement, as the Attorney General's opinion stated. It follows that the City also had the duty to transfer the entire property occupied by the appellant to the appellant without any encumbrances thereto, except to the extent imposed in an eminent domain proceeding providing just compensation. Because the City did not bring any eminent domain proceedings, any other attempt to encumber appellant's real property would be null and void. If the "easement" was null and void at inception, and the appellant was vested with his property upon passage of the federal act and state statute, it would then follow that any third parties (appellees), without having prior title or right to the real property of the appellant through the "easement" area, could not obtain any title or right to the appellant's real property through the platting.

The appellees, on the other hand, claim that the occupiers of tidelands property, prior to receiving title, were mere trespassers as against the sovereign, and had no rights, except as against a third party attempting ouster. Title passed from the United States to the State of Alaska. By qualifying under the provisions of AS 38.-05.320, the City of Ketchikan was issued a patent to all tide and submerged lands seaward to the pierhead line lying within the municipal boundaries. The receipt of the patent and subsequent recording and acceptance by the City of Ketchikan vested title in the municipality. By legislative enactment it became the *policy* of the State of Alaska to pass title to bona fide occupiers of tide and submerged lands within the State's boundaries (AS 38.05.320).

The Legislature expressly conditioned this policy by saying:

> Nothing in this section vests the right in a person to acquire the lands until a conveyance from the state is delivered to the grantee. AS 38.05.320(a).

Further, the City of Ketchikan had the power to pass title to qualified occupiers, and to *enhance* or *restrict* any boundaries or any title in the conveyance to the individual occupier under AS 38.05.320(b)(5), (6).

■ The appellees' position is the more defensible. The opinion of the Attorney General cited above is the only authority we have found dealing directly with this issue. The opinion asserted that the Tidelands Act was intended to give "definite vested property rights" to tidelands occupants, but admitted that the Act "appears to give the Territory [State] the discretion as to whether or not it would dispose of the property at all." [6] The opinion asserted that Art. III, § 5, Ch. 169, SLA 1959 corrects this problem by *mandating* the city's conveyance of the lands to the occupants. In support of this contention the opinion quoted Art. III, § 5(3)(c):

> Any occupant of land included in such conveyance to a municipal corporation, who occupied or developed the same on and prior to September 7, 1957, *shall* have a Class I preference right to such lands from such municipal corporation upon the execution of a waiver to the State and such municipal corporation of all rights such occupant may have acquired pursuant to Public Law 85–303 (71 Stat. 623). (emphasis added)

Apparently the opinion interpreted the word "shall" to apply to the conveyance of land. We find it is more reasonably applied to the granting of the "preference right". Art. III, § 5(1), Ch. 169, SLA 1959 provides as follows:

> It is the policy of the State to allow preference rights as hereinafter defined

---

5. *Id.* at page 6.

6. *Id.* at page 3.

for the acquisition of tide lands and submerged lands occupied or developed for municipal business, residential or other beneficial purposes on and prior to the date of admission of Alaska into the Union, *provided, nothing herein shall be construed as vesting any right in any person to acquire such lands until a conveyance from this State is delivered to the grantee.* (emphasis added)

The Attorney General interpreted the italicized portion of the statute to mean that the occupant must wait until the survey is finished before the occupant asserts his rights to clear title. In other words:

Its purpose was purely to aid in the orderly administration of the act by preventing the assertion of premature property claims.[7]

While we have not found any authority directly on point, the present situation is somewhat analogous to the rights of "preemption" granted in the early land acts. The pre-emption system was designed (like the preference rights system) to prevent inequities to the occupants of public land. According to Professor Thompson, by this system

persons possessed of particular qualifications, who have settled on and improved public lands, were given the right to a pre-emption or *preference* in purchasing the same when they were offered for sale by the government.[8]

A pre-emption right was *not*

a title, a common-law estate, or an interest in the land or the legal title thereto. It was not even an option to purchase the land, for the government was under no obligation to sell to the settler at any time. *It was merely a right of occupancy with preference as to purchasing when the government should elect to sell.*[9]

We need not, however, decide which of the competing legal theories is correct for,

whatever the nature of the preference right was, it is clear that the City was given title to dispose of strictly according to the terms of the Alaska Tidelands Statute, and that the City could not depart from its terms or the terms of its own ordinance adopted pursuant to the Tidelands Statute.

AS 38.05.320(b) provides in relevant part:

(1) Each home rule city and city of the first class granted a conveyance shall prepare an official subdivision plat of the area conveyed showing all structures and improvements and the boundaries of each tract occupied or developed, together with the name of the owner or claimant. The subdivisional plat shall include within the boundaries of each tract occupied or developed such surrounding tide and submerged lands as are reasonably necessary in the opinion of the governing body of the home rule cities and cities of the first class for the use and enjoyment of the structures and improvements by the owner or claimant, *but shall not include tide or submerged lands which if granted to the occupant would unjustly deprive an occupant of adjoining lands from his reasonable use and enjoyment of them.* (emphasis added)

. . . . . .

(5) In making a conveyance to an occupant, the home rule cities and cities of the first class *shall include as part of the tract conveyed and in addition to the occupied or developed lands, such additional tide and submerged lands as are reasonably necessary in the opinion of the governing body of the home rule cities and cities of the first class for the occupant's use and enjoyment of the occupied or developed land,* but the conveyance shall not include any area which would unjustly deprive an occupant of adjoining lands from reasonable use and enjoyment of those lands, or which, if devel-

---

7. *Id.* at page 5.

8. 5A Thompson on Real Proprety § 2724, at 1143 (1957 Replacement) (emphasis added; footnote omitted).

9. *Id.* at 1146 (emphasis added; footnotes omitted). *See also* Yosemite Valley Case, 82 U.S. (15 Wall.) 77, 21 L.Ed. 82 (1873).

oped, will interfere with navigation. (emphasis added)

■ The governing body was delegated the power to include or remove tide and submerged lands from the various occupied boundaries. This power was invoked when it was deemed necessary for an adjoining owner to have reasonable use and enjoyment of his occupied tidelands. Thus there is latitude to settle competing claims of use. The City is, therefore, authorized to include in an occupant's conveyance such other parts of the whole available land as are reasonably necessary to the occupant's use. The only limit upon this power is the requirement that an occupant of adjoining land not be unjustly deprived of reasonable use and enjoyment. By inference, the adjoining occupant may be deprived, justly, of such interest as does *not* interfere unduly with his use and enjoyment. If additional land may be carved out of an adjoining occupant's property, certainly an incorporeal hereditament may be imposed, being a lesser burden. By "justly" one would understand that the alteration of interests must be supported by reasonable necessity, concluded in a proceeding affording due process, and conformed to the requirement that undue hardship not be worked upon the adjoining owner. In effect, the statute gave the City authorities the power to adjudicate an easement by reasonable necessity on application for a conveyance. The adjoining occupant may contest the determination in an adversary adjudicatory proceeding from which appeal to the superior court is guaranteed by AS 38.05.320(b)(6). The initial inquiry thus is whether the pleadings and the trial herein established the competing property interests.

The complaint set forth that the appellees acquired a deed to the tidelands and the appellant likewise acquired a deed, both of which deeds were attached as exhibits. Neither deed referred to any easement. The complaint alleged that the appellees were the beneficial owners of an easement allowing ingress and egress, as was depicted on a portion of Sheet 14, Plat 107–C.

The answer denied the material allegations of the complaint, including the allegation that appellees had an easement. In paragraph 9, the appellant expressly denied the existence of an easement, and, as an affirmative defense, set forth that the "plaintiffs [appellees] have no deed or grant from the defendant [appellant] to an easement, as stated by the plaintiffs", and in paragraph 6 alleged that the "claim [to] an easement is without foundation, as there has been no granting of an easement by the defendant."

In the motion for summary judgment that was filed there was a deed from Ketchikan Packing Association to Alaska Packers Association, dated July 17, 1959, conveying, in part, an easement of a portion of Lot 2, Block 6A, U.S. 437, although, from the description, it was not the identical easement depicted on the tidelands plat. There was no indication as to how this easement was acquired, or from whom. The City conveyed the tideland lots to Alaska Packers by deed dated July 21, 1964, without reference to any easement. Alaska Packers conveyed the property to appellees Cessnun, et al., by deed dated September 7, 1966, without reference to any easement.

An affidavit of E. J. Cessnun, dated August 3, 1971, stated that Talbot's, Inc. "have consistently interfered with the easement appurtenant to our property for access to our dock facilities."

An affidavit of Lee Connel, an engineer for the City who supervised the preparation of the subdivision plat, stated "the easement was established to replace an existing easement that extended across tidelands claimed by Talbot's, Inc., from the easterly right-of-way line of Kennedy Street to the westerly line of tidelands claimed by the Alaska Packers Association." The easement was depicted on a plat prepared by Alaska Packers Association and was described in the deed from

Ketchikan Packing Company to Alaska Packers Association referred to above. The affidavit further stated that "it was discovered that Talbot's, Inc. had occupied, and was using the easement area described in the deed attached hereto as Exhibit B. The area actually being used for the access to the street right-of-way from Alaska Packers Association property was just south of the easement area on said plat. . . . The width [of the new easement] was increased from ten (10) feet to fourteen (14) feet. . . . "

An affidavit of George L. Gucker stated, "There has never been an easement at the location stated in the plaintiff's complaint and it was only by the act of Lee G. Connel's placing said easement on a plat that attempted to create an easement."

In a Statement of Genuine Issues, dated September 28, 1971, Talbot's alleged:

1. The Plaintiffs cannot show in any documentation any easement granted to them by deed wherein they seek this easement.

.    .    .    .    .    .

3. The placing of an "easement" on the City plat was at the sole whim of Lee G. Connel, without any prior easement or width of this size at the location contended by the plaintiffs.

.    .    .    .    .    .

8. The area in dispute has been blocked off once each year for more than fifteen years. . . .

9. . . . The "easement" does not state any rights of any parties to the "easement" or the purposes of the "easement".

In the attached memorandum, Talbot's stated that the attached plat left undefined the ownership interests and the rights of owners within the plat as to the use of the easement, and did not describe the "kind of use and purpose of the easement, or whether it be for overhead utilities, underground utilities, ingress, egress, or whatever and thus is void." The affidavit of James F.

Church, president of Talbot's, alleged, "There has never been an easement at the location stated in the plaintiffs' complaint" and "[t]he markings on the plat in question do not show the right or the type of easement , or otherwise, only dotted lines and word 'easement', it does not show the kind of 'easement', the type of uses, whether for utilities . . . , or ingress or egress." There were two deeds conveying the property to Talbot's. The earlier deed, dated November 21, 1921, reserved an easement for the benefit of the remaining property of the grantor. A subsequent deed, dated February 23, 1922, conveyed the remainder of the grantor's property, including the easement strip.

■ Under the circumstances, we hold that there were sufficient interests established by both parties to call for the Ketchikan City Engineer to decide, under AS 38.05.320(b)(6), whether the easement was reasonably necessary to Cessnun's use of its adjoining land.[10]

■ This decision, however, does not dispose of the case for, while there was sufficient evidence for the City Engineer to make a decision on the question of conflicting uses, the record does not reflect what he decided. The designation of an easement on the plat was not sufficient to reflect the nature of use, or purpose of the easement, or what it was for. Obviously, there are many types of easements. A review of the deeds from the City to the property owners does not help, for there was no mention in either deed of the easement.

We thus find that this case must be remanded for a determination as to what was found by the City Engineer. To this end both parties should be permitted to introduce evidence which bears upon both the existence of the easement and the type of easement contemplated.

■ The appellant additionally claims that the City Engineer failed to follow the requirements of Ordinance 651 and AS 38.-

10. *Cf.* City of Juneau v. Cropley, 429 P.2d 21 (Alaska 1967).

05.320, and this failure resulted in violation of the due process clause of the state constitution.[11] This argument is based on the contentions that the City Engineer failed to file (1) a notice of a contest with regards to the easement area, and (2) a certification that appellees' application conforms to the Tidelands Plat. We, however, fail to see how this action resulted in any denial of due process to the appellant. Appellant expands on the notice point, contending that the City, pursuant to Ordinance No. 651 (although it does not cite to any particular section or paragraph in support), was required to give personal notice of a dispute in the easement before a hearing could have been held. The City replies that, if notice is required, notice was in fact given personally.

The record clearly discloses that the appellant knew of the easement designated on its property on the Tidelands Subdivision Plat, leading to and provided for the benefit of the appellees' property. Appellant's president appeared in front of the City Council at a public hearing on the Tidelands Subdivision Plat; he was a member of the Planning Commission that approved the Tidelands Subdivision Plat; he was personally visited by the City Engineer, at which visit the easement was discussed. He played an integral part in the process which led to the ultimate approval of the Tidelands Subdivision Plat. Under these facts, we find that any required notice under the Act was given.

■ The final issue raised herein is whether the appellant is barred from asserting the failure of the City Engineer to properly establish the easement by its failure to appeal the decision as provided in the Ketchikan Tideland Ordinance. The answer is no. Whether we call the doctrine laches, waiver, or exhaustion of administrative remedies, there must appear a definitive decision which can be appealed. As we have previously noted, there was nothing in the deeds indicating an easement, and the designation on the plat was ambiguous. Thus the failure to appeal under the provisions of the Tidelands Act is understandable. Since no clear violation of rights appeared, a reasonable person could not be expected to appeal. The judgment of the trial court is vacated, and the case is remanded for further proceedings in conformity with this opinion.

---

11. Since a decision on appellant's assertion of denial of due process, through failure to receive notice of the establishment of the easement, is necessary to avoid error on retrial of this case, we consider such an additional claim of error herein. *Cf.* Ferguson v. State, 488 P.2d 1032, 1038 (Alaska 1971).