TALBOT'S, INC., an Alaska Corporation, Appellant and Cross-Appellee,

v.

CESSNUN ENTERPRISES, INC., John Benson, W. E. Brice, and the Estate of Kingdon G. Brice, Deceased, Appellees and Cross-Appellants.

Nos. 2561, 2671.

Supreme Court of Alaska.

July 22, 1977.

W. C. Stump, George L. Gucker, Ketchi-kan, Richard Richards, Richards, Watson, Dreyfuss & Gershon, Los Angeles, Cal., for appellant and cross-appellee.

Edward G. King, Ziegler, Ziegler & Cloudy, Ketchikan, for appellees and cross-appellants.

Before BOOCHEVER, C. J., and RABI-NOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from a final judgment of the Superior Court granting appellees a permanent injunction. The injunction prohibits appellant from interfering with appellees' use of an alleged easement across a dock located on certain tidelands in the City of Ketchikan. This marks the second time that this controversy has come before us. In a prior appeal, *Talbot's Inc. v. Cessnun Enterprises, Inc., et al.,* 518 P.2d 1064 (Alaska 1974), we vacated a similar judgment and remanded the matter to the superior court for further proceedings in conformity with our opinion in that case. On retrial, judgment was again entered in favor of appellee. This appeal followed.

In large measure, the facts surrounding this dispute are set forth in our first opinion and will not be repeated here.

Appellant and appellees own adjoining parcels located on tidelands acquired from the City of Ketchikan. The easement claimed by appellees crosses appellant's property and provides access to the water-front area. In our first opinion we held that the alleged easement was created, if at all, under what we there called the Alaska Tidelands Statute,[1] particularly AS 38.05.-

320(b). That section provides, in pertinent part:

> (1) Each home rule city and city of the first class granted a conveyance shall prepare an official subdivision plat of the area conveyed showing all structures and improvements and the boundaries of each tract occupied or developed, together with the name of the owner or claimant. The subdivisional plat shall include within the boundaries of each tract occupied or developed such surrounding tide and submerged lands as are reasonably necessary in the opinion of the governing body of the home rule cities and cities of the first class for the use and enjoyment of the structures and improvements by the owner or claimant, *but shall not include tide or submerged lands which if granted to the occupant would unjustly deprive an occupant of adjoining lands from his reasonable use and enjoyment of them.* (emphasis added)
>
> \*    \*    \*    \*    \*    \*
>
> (5) In making a conveyance to an occupant, the home rule cities and cities of the first class *shall include as part of the tract conveyed and in addition to the occupied or developed lands, such additional tide and submerged lands as are reasonably necessary in the opinion of the governing body of the home rule cities and cities of the first class for the occupant's use and enjoyment of the occupied or developed land,* but the conveyance shall not include any area which would unjustly deprive an occupant of adjoining lands from reasonable use and enjoyment of those lands or which, if developed, will interfere with navigation. (emphasis added)

Interpreting the foregoing section, we stated:

> In effect, the statute gave the City authorities the power to adjudicate *an easement by reasonable necessity* on applica-

---

1. Art. III, ch. 169, SLA 1959, as amended in AS 38.05.300–38.05.347. More accurately, these sections are part of the "Alaska Land Act." *See* § 1, Art. I, ch. 169, SLA 1959.

tion for a conveyance. (emphasis added)[2]

While recognizing that there were sufficient interests established by both parties to call for the Ketchikan City Engineer to decide, under AS 38.05.320(b)(6),[3] whether the alleged easement was reasonably necessary to appellees' use of their land, we further held:

> This decision, however, does not dispose of the case for, while there was sufficient evidence for the City Engineer to make a decision on the question of conflicting uses, the record does not reflect what he decided. The designation of an easement on the plat was not sufficient to reflect the nature of use, or purpose of the easement, or what it was for. Obviously, there are many types of easements. A review of the deeds from the City to the property owners does not help, for there was no mention in either deed of the easement.
>
> *We thus find that this case must be remanded for a determination as to what was found by the City Engineer.* To this end both parties should be permitted to introduce evidence which bears upon both the existence of the easement and the type of easement contemplated. (emphasis added)[4]

At the second trial of the case appellees' witnesses included Lee G. Connel, a surveyor and civil engineer. Connel testified that, while under contract with the City of Ketchikan, he had surveyed the area in question and that he was the person who had placed the contested easement on the tideland subdivision plat forming the basis for appellees' claim.

Connel stated that in his opinion the easement "most definitively was" reasonably necessary for the use and enjoyment of appellees' property. In answer to a question posed by the trial judge, Connel further stated:

> [W]hen you say why it was there, why I placed it there[,] I can only give you one answer. I placed it there as an easement for access and I had to place it in that location because I could see no other reasonable location to place it in.

Connel also testified, however, that appellees' property fronts on Water Street for a distance of some 190 feet and that two large doors provide access from Water Street, through appellees' own property, to the waterfront area served by the easement. Connel's opinion that the easement was reasonably necessary appears to have been based upon his own observations of the use made of the easement area and the historical use of that area for ingress and egress.

The evidence clearly established that appellees' and their predecessors in interest had long used the area covered by the alleged easement for ingress and egress, although such use was interrupted by the appellant's blocking of the area once or twice each year. However, the evidence

---

**2.** 518 P.2d at 1069. If an occupant of tidelands could establish that he had used an easement over adjoining lands for a sufficient number of years, without interruption, he might claim an easement acquired by prescriptive use, at least as another private claimant. Thus, he could well be entitled to recognition of such an easement under the provisions of AS 38.05.-320(b)(1) wherein the city is required to prepare an official plat showing "the boundaries of each tract occupied . . . together with the name of the owner or claimant." Here, however, the undisputed testimony was to the effect that Talbot's conspicuously blocked off the area contained in the alleged easement, completely preventing its use for ingress and egress, once or twice each year for many years prior to statehood. Such action prevents a user from acquiring an easement by prescription, for "[w]hen . . . the potential ser-

vient owner, by either threats of physical barriers, succeeds in causing a discontinuance of the use, no matter how brief, the running of the prescriptive period is stopped." 3 R. Powell, Real Property § 413 at 490–91.

**3.** AS 38.05.320(b)(6) provides:

> Each home rule city and city of the first class receiving conveyances shall by ordinance provide for reasonable regulations governing the filing and processing of applications, publication of notices, and the adjudication of disputes between claimants by the governing body of the home rule cities and cities of the first class. A party aggrieved by its determination may appeal to the superior court.

**4.** 518 P.2d at 1070.

also showed that such use was primarily a matter of convenience. For example, Patrick William Lloyd, whose father had operated a cannery on appellees' property, testified that the easement area was used as the main entrance to the cannery, but admitted during cross-examination that such means of access was merely more convenient. He stated that the doors on Water Street were kept locked mainly to discourage the cannery's workers from visiting a tavern that was opened across the street when it appeared "that perhaps the crew was spending a little more time over there than necessary." John William Thompson testified that the doors along Water Street were occasionally used but that it was more convenient to enter through the easement area. The testimony of these witnesses is consistent with that of the other witnesses who testified at trial.

The judgment now on appeal was based, in part, upon the following findings of fact and conclusions of law:[5]

### FINDINGS OF FACT

#### XXI

No evidence was adduced to show access to the dock facilities of the plaintiffs' (appellees') predecessors in interest from Water Street. Access from Water Street was not a common method to the cannery, the cannery office, or the dock facility.

#### XXIII

Under the provisions of the Alaska Tidelands Act and City Ordinance 651, the standard or criteria to be applied was reasonable use and enjoyment of occupied tidelands, and not an easement by necessity.

#### XXVII

The type of easement is for ingress and egress, including vehicles, pedestrians, service vehicles and their hoses, and should be kept clear to a height of at least eleven (11) feet.

### CONCLUSIONS OF LAW

11. This is not an easement by necessity, but was reasonably necessary for the use and enjoyment of the tidelands occupied by Alaska Packers Association, the predecessor in interest to the plaintiffs (appellees).

In reaching our decision it is apparent that we now must interpret what is meant by the term "reasonably necessary," as it relates to the creation of an easement under AS 38.05.320(b). The definition that we find most appropriate was well stated by the court in *United States v. Thompson*, 272 F.Supp. 774, 785 (E.D.Ark.1967), in connection with its discussion of the essential requirements for the creation of easements by implied reservation or grant:

> In order for such an easement to be established it must appear . . . that it is reasonably necessary for the enjoyment of the property, the term 'necessary' meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement. An easement by implication does not arise merely because its use is convenient to the beneficial enjoyment of the dominant portion of the property.[6]

We adopt the same standard for cases involving easements created under AS 38.05.-

---

5. Rule 52(a), Alaska R. Civ. P., provides in part:
   In all actions, tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . .. Findings of fact shall not be set aside unless clearly erroneous . . . ..

6. Citing *Greasy Slough Outing Club v. Amick*, 224 Ark. 330, 274 S.W.2d 63 (1954) and earlier Arkansas cases cited in the opinion in that case.

320(b).[7] Thus, while we recognize that strict or absolute necessity is not required, something more than mere convenience must be shown before an occupant of tidelands is entitled to an easement under the provisions of that statute.

Applying the foregoing rule to the instant case, we hold that the trial judge was clearly mistaken in finding that there was a substantial basis for the City engineer's conclusion that the alleged easement was reasonably necessary for appellees' use and enjoyment of their property. The record was devoid of such evidence. At most, the easement was shown to be a matter of added convenience.

Our search of the record fails to disclose evidence sufficient to support appellees' contention that the access available from Water Street would not provide them with a reasonable mode of ingress and egress sufficient to allow them full use and enjoyment of their property. The fact that such access may be less convenient, or that it is not a method of access commonly used by them or their predecessors in interest, does not mean that it is unavailable or that it is not a reasonable mode of access.

The judgment of the superior court is reversed. This matter is remanded for entry of judgment in favor of appellant, such judgment to include an award for costs and reasonable attorney's fees. Our resolution of this case makes it unnecessary for us to decide the other issues presented by the appeal or by appellees' cross appeal.

REVERSED and REMANDED for entry of judgment in favor of appellant.

---

7. We do not imply that the term "reasonably necessary" should be defined in this manner for the purpose of determining portions of unoccupied tidelands reasonably necessary to an occupant's use and enjoyment of occupied or developed land. The definition which we use here applies to the claim of an easement across the tidelands occupied or developed by another.