CITY OF HOMER, Appellant,

v.

STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, and Charles F. Herbert, Commissioner of Natural Resources, and Mary Jane Hillstrand, Appellees.

No. 3009.

Supreme Court of Alaska.

July 22, 1977.

35. *Id.* at 725–26.

A. Robert Hahn, Jr., of Hahn, Jewell & Stanfill, Anchorage, for appellant.

W. C. Arnold and R. Eldridge Hicks, Anchorage, for appellees.

## OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

This appeal concerns competing claims by the parties to certain tidelands located off the Homer Spit, at Homer, Alaska. At the time this controversy arose, the State of Alaska held title to the tidelands.

Because the acquisition of this property by the State of Alaska was subject to certain conditions, some of which are operative on the facts in this case, it is appropriate to outline the history of the acquisition.[1] The original title was passed to the United States from Russia by the Treaty of Cession (1867).[2] In 1957, the United States passed title of the tidelands to the Territory of Alaska under the Tidelands Act.[3] While the federal government retained certain rights, the title granted to the Territory was in fee simple. The Act contained a restriction on alienation to the effect that, if the land was to be disposed of, the occupants thereof were to be given "preference rights."[4] Following statehood, the Alaska Land Act[5] was enacted, which gave authority to the Alaska Department of Natural Resources to dispose of the property ac-

quired by Alaska through operation of the Tidelands Act.

 One purpose of the Alaska Land Act was to establish equitable methods of disposing of certain tidelands. Toward this end, and within the federal parameters requiring the recognition of "preference rights," AS 38.05.320 was included in the Act. It is within the context of this statute that this controversy arises. Specifically, it concerns that portion of AS 38.05.320 which vests the Director of the Division of Lands with the responsibility of formulating regulations for the filing and processing of applications for claims and the adjudication of disputes between competing claimants.[6]

The Hillstrands, in 1962, filed a preference right document consisting of an application form to the Division of Lands in an attempt to gain title to the tidelands involved here. The City of Homer submitted application for the tidelands in question in July 1965. This was approximately 16 months following the City's incorporation.

In July 1973, the Division of Lands notified the parties that it was excluding certain tidelands, which it deemed suitable for the Hillstrands' preference rights, from a conveyance of other tidelands to the City of Homer as a result of the City's application.

The City of Homer objected to this exclusion and filed timely notice of the objection with the state. In October 1973, the Director of the Division of Lands rendered his decision in this matter. He responded point by point to the protest of the City of Homer and rejected the protest with detailed reasons stated. In November 1973, the City of Homer filed a notice of appeal to the Commissioner of Natural Resources. In Febru-

---

1. This historical account is taken in part from *Talbot's Inc. v. Cessnun Enterprises, Inc.*, 518 P.2d 1064, 1065 (Alaska 1974).

2. 15 Stat. 539.

3. 48 U.S.C. § 455, *et seq.* (1957).

4. 48 U.S.C. § 445(a)(b) (1957).

5. Chapter 169, SLA 1959, presently codified with amendments as AS 38.05.005–38.05.370.

6. AS 38.05.320(c)[6] provides:

 The director shall by regulation provide for reasonable regulations governing the filing and processing of applications, the publication of notices and the adjudication of disputes between claimants. A party aggrieved by an adjudication may appeal to the superior court.

ary 1974, the Commissioner sustained the rejection of the Director and dismissed the appeal of the City of Homer.

The City then appealed to the superior court.[7] The City contended that its request for "an adjudication" was denied, thus violating the City's constitutional right to due process. By memorandum decision, the superior court upheld the decision of the Commissioner of Natural Resources, which had excluded from the tidelands sought by the City those tidelands within the preference-right area of the Hillstrands.

The City of Homer now appeals to this court from that decision. It is the City's contention that the procedures of adjudicating controversies employed by the Division of Lands were unreasonable and resulted in an arbitrary decision, thus denying the City due process of law.

The Hillstrands contend that the City of Homer, as a municipality, is an improper party to raise a due process of law claim because it is not a "person" within the due process clause of the fourteenth amendment to the United States Constitution or art. I, § 7 of the Alaska Constitution.

Although the parties' constitutional arguments address significant issues affecting state-municipal relationships, we think it unnecessary to decide such far-reaching issues given the factual context of the instant case.

In AS 38.05.320(b), the legislature has provided a mechanism by which home rule cities and cities of the first class may obtain conveyance of certain tide and submerged lands. The same section provides for conveyance of such lands to other occupants, too. Consistent with this comprehensive treatment, AS 38.05.320(c)(6) requires the Director to adopt regulations governing adjudication of conflicts among claimants; and the Director has promulgated a single set of regulations for settling disputes among all types of claimants.

In providing for a unitary scheme of adjudicating disputes between competing claimants, the legislature has shown its intention that the claims of municipalities be determined along with those of other occupants. Accordingly, in the absence of contrary legislative language, it can be inferred that the legislature intended the same administrative procedures and safeguards to apply to all claimants. Private parties are entitled to due process of law before property rights may be removed; therefore, the minimal protection provided by Departmental adjudicatory procedures must meet that standard. Municipalities are thus likewise entitled to due process in the adjudication of claims to these tide and submerged lands.

Further support for this analysis is found in Section 2(b) of the Tidelands Act (Pub.Law 85–303; 71 Stat. 623). Section 2(b) reads as follows:

The Territory may manage and dispose of any tract of land acquired by it under subsection (a) of this section, and of any revenues or proceeds therefrom, in such manner as the legislature of the Territory may direct, except that in the disposition, by sale, lease, or otherwise, of any tract which is occupied or developed for municipal, business, residential, or other beneficial purposes on the date of approval of this Act, the Territory shall afford a preference right to the occupant thereof on the date of approval of this Act, or his successor in interest, or, if the Territory deems it more advisable, shall dispose of the tract to the incorporated town or independent school district to which it is adjacent. If such an occupied or developed tract is conveyed to an incorporated town or school district, the town or district shall, in its disposition of the tract, afford a similar preference right to the occupant of the tract. Where the tract is occupied by a person other than the owner of the improvements thereon, the owner of the improvement shall, for the purposes of this subsection, be considered the occupant of the tract . . . . .

---

7. The superior court had jurisdiction over this administrative appeal by virtue of AS 38.05.-320(c)[6], *supra* n.6.

■ The language of the Tidelands Act illustrates that Congress intended that fair treatment be provided to both municipalities and private parties in disposition of tide and submerged lands by the Territory of Alaska. If the Territory disposed of the lands granted by the Act, it had two choices. First, if the tract had been "occupied or developed for municipal, business, residential, or other beneficial purposes" at the date of the Act's approval, the occupant or his successor in interest must be afforded a preference right to the land. Municipalities were thus placed on the same footing as other occupants of such lands and were entitled to the same preference rights. Second, the Territory could transfer tide and submerged lands "to the incorporated town or independent school district to which it is adjacent" whether or not the lands had been occupied or developed for the beneficial purposes listed. Recipient towns or school districts were then required to afford a preference right to occupants of the tract similar to what they would have received if the Territory had disposed of the lands itself under the first alternative. Under either choice, Congressional intention to provide fair treatment for municipalities in disposition of the granted lands is readily apparent.

Finally, the legislative history of the Tidelands Act also shows that Congress understood that tidelands were being used by both private parties and municipalities. "Included among these improvements are not only docks and warehouses but also streets, hotels, stores, schools, and private residences." Sen.Rep.No.1045, 2 U.S.Code Cong. & Admin.News, pp. 1933, 1934 (1957). The Senate Report makes no distinction between preferences for private or municipal occupants and simply restates the preference protection for occupants where lands are transferred to towns or school districts and are subsequently disposed of.

Consequently, we conclude that with respect to the disposition of tidelands, munici-pal corporations are to be afforded the same rights of due process as are private parties.

■ The Hillstrands also contend that the City of Homer is an improper party because it has no standing to assert an interest in the property in dispute. We reject this assertion and reaffirm the standard articulated in *Moore v. State,* 553 P.2d 8 (Alaska 1976), for the purposes of determining proper standing. As we stated in *Moore*:

As previous decisions of this court indicate, the concept of standing has been interpreted broadly in Alaska, favoring increased accessibility to judicial forums. In *Coghill v. Boucher,* 511 P.2d 1297, 1303 (Alaska 1973), we noted that "[i]n the past . . . this court has departed from a restrictive interpretation of the standing requirement."

Whether a party has standing to obtain judicial resolution of a controversy depends on whether the party has a sufficient personal stake in the outcome of the controversy. In our recent decision of *Wagstaff v. Superior Court, Family Division,* 535 P.2d 1220, 1225 (Alaska 1975), we described this requirement in terms of "injury-in-fact," and explained that its purpose is to assure the adversity which is fundamental to judicial proceedings. (footnotes omitted)[8]

In adjudicating the principal issue raised by the City, it must be determined whether administrative regulations established by the Director of Lands[9] are reasonable and not arbitrary.[10] The specific regulation involved here is 11 AAC 62.130, which provides:

Anyone may file a protest with respect to the grant, sale, lease, or other disposal of tideland or materials thereon or therein. Such a protest shall be in writing and contain a statement as to the nature and reason for the protest. Each protest so

---

8. *Moore v. State,* 553 P.2d 8, 23 (Alaska 1976).

9. These regulations are found at 11 AAC 62 *et seq.*

10. *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971).

made shall be filed with the director during but not later than 30 calendar days subsequent to the last date of publication or the date provided for in the posting. The party protesting shall be required to notify by registered or certified mail the party whose action he is protesting. The postmark date of the addressee's post office will govern. Failure to protest shall constitute a waiver.

Appellant challenges 11 AAC 62.130 as follows:

The opportunity to submit a letter and supporting affidavits certainly would not result in an adjudication of the disputes between the claimants, after consideration by the Director. A letter and an affidavit does not allow a party to adequately dispute the Director's decision . . .

This assertion is at the heart of appellant's appeal. Accordingly, the procedure established by 11 AAC 62.130 must be weighed against the requirements of due process.

In discussing the application of due process, the case of *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is instructive. In this case, the Supreme Court of the United States said:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally involve consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. (citations omitted) [11]

▮ Initially, we note that the interest of the City of Homer to be protected is an economic one which, by operation of the controlling statute, is contingent and had not become vested. A classification of the involved interest is necessary because the relative weight of the property interest is a relevant factor in determining the form of procedure required to satisfy due process.[12]

Secondly, we believe there was little chance of an erroneous deprivation of the City's interest in the tidelands because the pertinent regulation, 11 AAC 62.130, is sufficiently broad to permit comprehensive protests and thus allowed the City to place before the Director of Lands all information necessary to assure that the Director would be fully informed prior to reaching a decision.

The City's letter to the Director of Lands, in fact, was comprehensive and specific in articulating the City's protest. Furthermore, the regulation involved is of sufficiently broad scope to have permitted the City, had it felt a need to present further information, to have expanded more fully in setting forth the details of its protest by submitting documentation such as affidavits, etc. and, moreover, to have required a full evidentiary hearing with the opportunity to present the testimony of witnesses and to present oral and written arguments.[13] The regulation involved does not foreclose such a procedure. Since the City had the full opportunity to make a more comprehensive and detailed presentation had it chosen to do so, there was very little chance of an erroneous deprivation of the City's economic interest in the tidelands involved here.

It will be noted, of course, that the regulation in itself does not explicitly call for a full evidentiary and adversary hearing. But there is a legitimate reason for that. Consideration must be given to the state's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. Here we have massive transfers of tideland

11. *Matthews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18, 33 (1976).

12. *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971).

13. *See State v. A. J. Industries, Inc.,* 397 P.2d 280, 283 (Alaska 1964).

rights. If hearings were held in each case without a formal request for such a hearing, the administrative burden and expense would be enormous.

In examining the issues presented by the City's letter of protest, we find they were not of a nature that mandated the Director to grant an evidentiary hearing with the right to examine and cross-examine witnesses and to have the opportunity for oral argument. The Director's lengthy and comprehensive response to the City's protest, in which he specifically responded point by point to the protest, as well as the actual adjudication of this dispute, leads us to the conclusion that the City was not denied due process of law. Similarly, there is no merit to the City's contention that there was not information before the Director sufficient for him to determine the amount of additional tideland reasonably necessary for the use and enjoyment of the occupied and developed land.

AFFIRMED.

ERWIN, J., not participating.