STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellant,

v.

CITY OF HAINES, an Alaska Municipal Corporation, Appellee.

No. 5067.

Supreme Court of Alaska.

May 8, 1981.

G. Thomas Koester, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellant.

James R. Webb, Faulkner, Banfield, Doogan & Holmes, Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

RABINOWITZ, Chief Justice.

This case presents for review the matter of the proper construction to be given to AS 38.05.320(b) (granting to home rule cities and cities of the first class incorporated on or before April 1, 1964, the right to conveyance of tidelands[1] seaward of their boundaries).[2] The issue is whether the right should be limited to city boundaries as of April 1, 1964, or whether additional tideland conveyances should follow municipal expansion accomplished by annexation after April 1, 1964.[3]

The City of Haines [hereinafter "the city"] is a city of the first class as defined in AS 38.05.320(d)(8), incorporated on January 24, 1910. On June 5, 1970, the city annexed the uplands adjacent to the tidelands at issue here.

The city applied for a conveyance of these tidelands on December 16, 1977, and its application was denied on January 10, 1978. Two successive administrative appeals followed, both of which were denied.[4] The grounds for the denial were:

> The tidelands applied for are situated seaward of the corporate boundaries of the City of Haines as established on March 8, 1970, whereas under AS 38.05.320(b) the controlling boundary is in my opinion that existing on April 1, 1964.

The city then appealed to the superior court; that court ruled in its favor holding

---

1. "Tidelands" is used as shorthand for tidelands and submerged lands.

2. The relevant portion of AS 38.05.320 reads as follows:

   (b) Home rule cities and cities of the first class incorporated on or before April 1, 1964, may apply, in the manner prescribed by the director, and in accordance with such regulations as the director may adopt, for a conveyance to them of all lands seaward of the home rule cities and cities of the first class which are between the mean high tide line in, or forming the boundary of, the home rule cities and cities of the first class, and a line to be shown on a plat made a part of the application which shall be the pierhead line established under the Act of September 7, 1957, or the harbor line established under the Act of March 3, 1899, or if no pierhead line or harbor line is established then a line subject to approval by the director, with the concurrence of the commissioner, which shall be seaward of all tidelands and submerged lands occupied or suitable for occupation and development without unreasonable interference with navigation. The director shall convey these tide and submerged lands to home rule cities and cities of the first class. Applications by preference right claimants filed with the director before June 30, 1964, shall continue to be processed to a final determination and conveyance, if any, by the director, if such preference right claimants are entitled to a conveyance from the director under the [provisions] existing previous to July 22, 1964.

3. The conveyance here is *not* a "preference right." Under the statute, the municipality is granted its tidelands subject to these "preference rights," which are rights of acquisition based on occupancy or development prior to January 3, 1959. *See* AS 38.05.320(d)(3). In the absence of preference rights, the lands are given to the municipality grantees. AS 38.05.320(b)(7). This case deals with the rights of municipalities as municipalities, not as prior users or developers. This makes this case somewhat different from *City of Homer v. State*, 566 P.2d 1314 (Alaska 1977), *Talbot's, Inc. v. Cessnun Enterprises, Inc.*, 518 P.2d 1064 (Alaska 1974), *after remand*, 566 P.2d 1320 (Alaska 1977), and *City of Juneau v. Cropley*, 429 P.2d 21 (Alaska 1967), all of which dealt with preference rights issues.

4. Actually, the initial denial was on a different ground—lack of timeliness under 11 AAC 62.-170. However, the city convinced the Division of Land and Water Management that this regulation had been superseded by subsequent legislation, and this issue is not before the court.

that the statute's grant did encompass tidelands adjacent to the subsequently expanded municipal boundaries. The state now brings this appeal.

Initially, we hold that the proper standard of review for us to apply is the "independent judgment" criterion since the only issue before us is a matter of statutory construction.[5] This was the standard applied by the superior court.

The state presents arguments based upon legislative history, general rules of statutory construction, and public policy. We find these unpersuasive.

The language of AS 38.05.320(b), quoted in note 2 above, does not appear to be ambiguous or doubtful on its face. Certain classes of municipalities, incorporated prior to April 1, 1964, are given a right to adjacent tidal lands, subject to the "preference rights" of certain previous users or developers. The April 1, 1964, date is the date by which the eligible municipality must have been incorporated. Once a city qualifies, its entitlement is to tidelands "between the mean high tide line in, or forming the boundary of, [the municipality], and [the pierhead line, harbor line, or other administratively drawn line]". We think that this

does set a lateral boundary, as well as landward and seaward boundaries, for the tracts, contrary to the state's assertion. Thus, the facial meaning of the statute would indicate that post-April 1, 1964 expansion by cities which were incorporated before April 1, 1964, and are otherwise eligible, clearly creates entitlements to the corresponding tidelands.

This clarity of language, although it does not preclude the court from examining the legislative history proffered by the parties,[6] does place a greater burden on the state, as the party seeking to dissuade us from giving the statute its apparent meaning, to demonstrate that the legislative history reveals some hidden ambiguity in the legislature's usage of terms, and resolves that ambiguity in that party's favor. Otherwise, the statute should be given its facial meaning.

Here, we find it unnecessary to address the parties' lengthy legislative history arguments in full, as the state has not convinced us that either the language or the legislative history reveals any ambiguity. Each party attempts to extrapolate its desired result from the history of federal, territorial, and state legislation passed concerning Alaska's tidelands.[7] The fact is that no

---

**5.** *See State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979).

**6.** If the parties present arguments based on legislative history, the court reads and considers them. We have rejected that formulation of the plain meaning rule which mandates that we must disregard all legislative history if the statute's wording is clear and unambiguous on its face. *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 n.7 (Alaska 1978). To do so would overly restrict our inquiry, since reference to legislative history may provide an insight which is helpful to making a judgment concerning what a statute means, *id.* at 540, and since words are necessarily inexact and ambiguity is a relative concept. *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973).

Consideration of the legislative history may demonstrate that an ambiguity, although not apparent on the face of the statute, does exist with respect to the legislature's use of a particular term. However, if not, then we must adhere to the general rule that if the language of a

statute is unambiguous and expresses the intention of the legislature, it should not be modified or extended by judicial construction. *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 635 n.31 (Alaska 1979).

Thus, although a facially clear and unambiguous statute does not preclude the court from consideration of the legislative history, it does indicate that the court need not explain its conclusion by reference to that legislative history; the "plain meaning" of the statute provides a sufficient basis on which to rest our decision. Although we reject the fictitious notion that the court does not consider the legislative history, we think it remains true that the court need not address the legislative history in its opinion if the statute, even read in light of that legislative history, remains clear and unambiguous.

**7.** The steps in the legislative history are the 1957 Act passed by the Territorial Legislature (ch. 184, SLA 1957); the 1957 federal Tidelands Act passed by Congress (Pub.L. 85–303, 71 Stat. 623, 48 U.S.C. §§ 455–455c); the 1959 Act passed by the new Alaska State Legislature (ch. 169, SLA 1959); a 1960 formal Attorney

legislature ever addressed itself directly to this issue, and the parties' attempts to derive policy pronouncements from other legislation are unsuccessful. The state relies principally upon a 1960 Attorney General's opinion which espouses its view, and which it argues was implicitly adopted by the legislature because no responsive legislation reversing it has been introduced. The city points to a 1964 Attorney General's opinion which takes a contrary view,[8] and to a bill which was introduced in the 1965 legislature (H.B. 90, 4th Leg., 1st. Sess. (1965)) and which, although not mentioning the 1964 Attorney General's opinion, clearly would have reversed it and would have affirmed the 1960 Attorney General's opinion. The bill died in committee, and thus, the city argues, the legislature consciously approved the city's position. We find neither party's argument particularly compelling on this point. Both are forced to rely on legislative inaction, a "weak reed upon which to lean."[9] Even assuming an examination of the legislative history bore out these assertions, such arguments would not be of sufficient weight to persuade us in this case that the legislature meant something different from the statute's facial meaning.

Both sides also rely on opposing rules of statutory construction. The state cites case law from other jurisdictions to the effect that grants of public land are to be strictly construed against the grantee and in favor of the grantor,[10] and that annexation of land by a municipality does not carry additional property rights with it.[11] The city cites Alaska case law establishing a rule of liberal construction in favor of individuals' preference rights [12] and equating the treatment to be afforded the preference rights of individuals and municipalities.[13] Since we find the statutory language unambiguous, we decline to adopt either a strict or a liberal construction rule here.

Last, the state argues that public policy supports its position. Quoting at length from *Illinois Central Railroad v. People of the State of Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892), and *People v. California Fish Co.*, 166 Cal. 576, 138 P. 79 (1913), the state urges that the state holds these lands in trust, and that statutes purporting to authorize an abandonment of

General's opinion (1960 A.G. op. no. 13); some 1964 amendments to the 1959 Act (ch. 81, SLA 1964); a 1964 informal Attorney General's opinion; and an unsuccessful bill introduced in 1965 (H.B. 90, 4th Leg., 1st Sess. (1965)). The parties seem to agree that the 1966 amendments to the statute did not affect the issue here.

8. The opinion reasoned that the 1959 Act required municipalities to file their applications within three years of the effective date of regulations implementing the statute, which resulted in an application deadline, and de facto boundary-fixing date, of July 20, 1963. Municipal expansion after that date could not result in additional tideland conveyances, since any application for same could not be timely. However, the 1964 Act eliminated the application deadline, thus eliminating the de facto boundary-fixing date, which left the statute open-ended on this point. Therefore, the opinion concluded, subsequent expansion could result in additional tideland conveyances. Letter from Warren C. Colver, Attorney General, by John K. Brubaker, Assistant Attorney General, to Phil Holdsworth, Comm'r, Dep't Natural Resources, Juneau (August 10, 1964).

9. 2A C. Sands, Sutherland Statutory Construction § 49.10, at 261 (4th ed. 1973). It is clear

that a stronger case is made out when the administrative interpretation is called to the legislature's attention and some action has been taken pertaining to the statute which does not include reversal of the administrative interpretation. *Id.* On this basis, we think that the city probably has the stronger of the two weak reeds.

10. *Inhabitants of Stoneham v. Commonwealth*, 249 Mass. 112, 144 N.E. 83 (1924); *City of Passaic v. State, Comm'r of Commerce & Economic Dev.*, 33 N.J.Super. 37, 109 A.2d 294 (1954); *People v. Wainwright*, 237 N.Y. 407, 143 N.E. 236 (N.Y.1924).

11. *City of Oakland v. Oakland Water-Front Co.*, 118 Cal. 160, 50 P. 277 (1897).

12. *City of Juneau v. Cropley*, 429 P.2d 21, 29 (Alaska 1967).

13. *City of Homer v. State*, 566 P.2d 1314, 1318 (Alaska 1977). As noted above, this authority deals with preference rights, not a municipality's non-preference conveyance rights. *See* note 3 *supra*. We need not decide whether the same rules apply to both.

public use must be considered carefully to ascertain whether that was the legislative intent. The state insists that a liberal construction resulting in an open-ended unconditional grant of an undetermined amount of tideland should be avoided because such a construction would open the door to municipal speculation in the ownership of tidelands.[14] This, it speculates, could result in the appropriation of large amounts of tidelands—"conceivably reaching virtually all such lands in the State"—by municipalities. The City/Borough of Juneau is cited as an example. The state observes, further, that the lands herein granted are not likely to be subject to preference rights, as these had to be asserted by July 1, 1967,[15] and argues that under a liberal construction the municipalities would receive a "windfall economic benefit," which it asserts is not in the public interest.[16] Finally, the state argues that the statute is clearly a discriminatory one, excluding second class cities and boroughs,

and municipalities incorporated after April 1, 1964, and that, from a policy standpoint, a narrow construction which minimizes the discrimination (by not widening the gap between municipalities incorporated before and after April 1, 1964) is preferable and more clearly comports with "the only apparent rational reason for the legislature to establish such a discriminatory system in the first place: recognizing pre-existing occupation and development." [17]

The city's response to the state's "public trust" argument is that the cases cited by the state all involve grants to private parties rather than municipalities. It observes that the City of Haines, being a public entity, is regulated by the same public policy considerations as is the state government. The city asserts that Alaska's statutory scheme for annexation of lands and conveyance of tidelands contains sufficient safeguards to prevent speculation.[18] The

---

14. To some extent, the state's public policy arguments are predictions of what evils would flow from a general liberal construction rule regarding non-preference conveyances to municipalities. These predictions are somewhat undercut by our declining to adopt a general liberal construction rule in this area.

15. AS 38.05.320(c)(3).

16. The state's assertion as to individuals losing their preference rights is somewhat misguided. The requirement that preference rights had to be asserted by July 1, 1967, applies only to preference rights in tidal lands "not seaward of a home rule or first class city." AS 38.05.-320(c)(3). In other words, the deadline arguably applies only to preference rights asserted against the state. It is conceivable that, having waived their preference rights as to the state, those individuals have also done so as to the municipality; but assuming this is the law, the "windfall" is not at the expense of the preference right claimants, as they have already lost their rights to the state. In effect, the state is complaining about losing its own "windfall," and about the possibility that, if the land is conveyed to the municipality, those preference rights claimants are perhaps getting a "second chance" to assert their preference rights. We do not express any opinion as to whether or not the law allows this "second chance."

17. The state cites no authority for its proposition that an interpretation minimizing the discrimination between different classes of cities is preferable. There is a rule of statutory con-

struction that unconstitutional interpretations should be avoided, but it is not alleged that the distinction here constitutes an equal protection violation. Beyond that rule, the state proffers no principle which calls for a "narrower gap" in situations such as this one. The state does assert that there is a general legislative policy favoring uniform treatment of municipalities regardless of their date of incorporation, citing as an example AS 29.18.202–.203 (municipality's general land grant entitlement is 10% of maximum of vacant, unappropriated unreserved land within its boundaries between eligibility and July 1, 1978, or on the date of incorporation). Even assuming that there is some state policy favoring uniform treatment of different classes of municipalities, it should not prevail over an explicit legislative mandate, such as this one, distinguishing one class from another. Absent some constitutional question, the distinction drawn by the legislature should not be diluted, limited, or otherwise given less than its full effect.

18. Currently, two statutes govern municipal expansion and an additional statute governs conveyances of tidelands in this situation.

The statute governing municipal expansion by local action, AS 29.68.010, and that governing municipal expansion by state action, AS 44.47.583, both require that the legislature have a "veto"—i. e., the Local Boundary Commission is directed to present its proposals to the Legislature, and they become effective unless disapproved by a majority of both houses within in a particular time.

city also points out that the City/Borough of Juneau is a poor example to use, as boroughs are clearly excluded from the category of "home rule city or city of the first class" by the statute.

Our decision is unaltered by these public policy considerations. We think the statute's intent is clear. Furthermore, the legislature, which is in a much better position than the court to assess the public policy implications of the statute, has the opportunity to veto each and every expansion of municipal boundaries which may invoke the rule. Finally, the legislature is free to modify this statute if it sees fit to do so.

Thus, we conclude that the language of AS 38.05.320(b) is clear and unambiguous, and that the city's interpretation is correct. Our conclusion is not changed by the parties' arguments concerning legislative history or the maxims of statutory construction. As to the public policy arguments, they are better addressed to the legislature; that body has ample opportunity to consider them, either in its review of each municipal expansion or in its option of passing new legislation in this area.

The judgment of the superior court is Affirmed.

As to locally-initiated annexation, the statute also requires that the annexation be approved by a majority of the voters residing in the area to be annexed, unless that area is entirely municipally-owned or all property owners and voters in that area petition for an annexation ordinance. AS 29.68.010. These requirements have been included in the regulations promulgated by the Local Boundary Commission for locally-initiated annexation, 19 AAC chapter 15.

For state-initiated annexation, the Local Boundary Commission has promulgated a fairly elaborate notice-and-hearing procedure, 19 AAC chapter 10.

As to conveyances of tidelands, the statute, by its terms, only conveys "tidelands and submerged lands occupied or suitable for occupation and development without unreasonable interference with navigation." AS 38.05.320(b). The city states that this gives the Director of the Division of Lands and the Commissioner of the Department of Natural Resources limited discretion to refuse to convey tidelands which are clearly unsuitable for occupation or development, or those whose development would interfere with navigation.