**Melvin B. GILLIS, Appellant,**

v.

**ALEUTIANS EAST BOROUGH and State of Alaska, Department of Natural Resources, Appellees.**

No. S–13620.

Supreme Court of Alaska.

Aug. 19, 2011.

---

J.P. Tangen, Anchorage, and Lawrence V. Albert, Anchorage, for Appellant.

Joseph N. Levesque, Walker & Levesque, LLC, Anchorage, for Appellee Aleutians East Borough.

John T. Baker, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee State of Alaska.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## *OPINION*

WINFREE, Justice.

## I.  INTRODUCTION

The superior court interpreted a statutory preference for the purchase of state land in a manner disqualifying an applicant.  Because the superior court correctly interpreted the statute, we affirm its decision.

## II.  FACTS AND PROCEEDINGS

In accordance with article VIII, section 10 of the Alaska Constitution, the legislature enacted the Alaska Land Act shortly after statehood, providing in part "for the selection, acquisition, management, and disposal of Alaska lands and resources." [1]  In 1984 the legislature amended the Act, adding a provision granting those meeting certain requirements a preference right to purchase or lease state land. [2]  The provision, codified at AS 38.05.035(f), provides in relevant part:

---

1.  Ch. 169, SLA 1959 (codified at AS 38.05.005–.990); *Alyeska Ski Corp. v. Holdsworth*, 426 P.2d 1006, 1009 (Alaska 1967); *see also* Alaska Const. art. VIII, § 10 ("No disposals or leases of state lands, or interests therein, shall be made without prior public notice and other safeguards of the public interest as may be prescribed by law.").

2.  Ch. 152, § 20, SLA 1984 (codified at AS 38.05.035(f)).  A preference right allows for the

The director shall grant a preference right to the purchase or lease without competitive bid of up to five acres of state land to an individual who has erected a building on the land and used the land for bona fide business purposes for five or more years under a federal permit or without the need for a permit and, after selection by the state, under a state use permit or lease, if the business produced no less than 25 percent of the total income of the applicant for the five years preceding the application to purchase or lease the land.

In 1985 the State of Alaska, Department of Natural Resources (DNR) promulgated the final regulation interpreting this preference right, which remains unchanged and provides in relevant part:

> Upon a written finding under AS 38.05.035(e) that the interests of the state will best be served, the director will grant a preference right to lease without competitive bid, or purchase at appraised fair market value, up to five acres of state land to an applicant who submits written proof
>
> (1) of entering the land while the land was under federal jurisdiction;
>
> (2) of erecting and using, for at least five years while the land was under federal jurisdiction, a building erected under any authorization required under federal law.... [3]

Melvin Gillis, a professional sport hunting and fishing guide, obtained a 25-year lease of five acres of state land in April 1989. Gillis built a lodge on the land, and the operation of the lodge and his guiding business provide his principal source of income.

In June 2005 DNR conveyed lands, including the land Gillis leased, to Aleutians East Borough. DNR also transferred its interest in Gillis's lease to the Borough. Gillis offered to purchase the land in November 2005. The Borough Assembly rejected Gil-lis's offer but proposed a new lease agreement. Gillis did not execute the proposed lease, and in 2007 he claimed he was eligible to purchase the land under AS 38.05.035(f). The Borough maintained Gillis did not qualify for a preference right under subsection .035(f) because his lease commenced after the federal government transferred the land to the state. In 2008 Gillis reiterated his preference-right claim.

The Borough then filed a declaratory judgment action, asking the superior court to determine whether Gillis qualified for a preference right to purchase the land under subsection .035(f). Gillis counterclaimed against the Borough, filed a third-party complaint against DNR, and moved for partial summary judgment against both parties. The Borough and DNR cross-moved for summary judgment. At issue was whether subsection .035(f) required an applicant to enter land while it was under federal ownership as a condition of the preference right.[4]

The superior court concluded that the plain meaning of subsection .035(f) required an applicant to enter land when it was under federal ownership before the federal government conveyed the land to the state. The court noted the legislative history indicated subsection .035(f) was remedial and intended "for a limited class of people." The court also noted DNR's implementing regulation tracked subsection .035(f)'s plain meaning. The court entered summary judgment in favor of the Borough and DNR.

Gillis appeals.

## III. STANDARD OF REVIEW

▆ We review an agency's interpretation of a statute using our independent judgment when "the agency's specialized knowledge and experience would not be particularly probative on the meaning of the statute."[5] "We will adopt the rule of law

---

purchase or lease of state land without competitive bid. *See, e.g.,* AS 38.05.035(b)(2), (b)(3), (f).

**3.** 11 Alaska Administrative Code (AAC) 67.053(a)(1)-(2) (2005).

**4.** We adopt the parties' use of various phrasings of "entry" to mean erecting a building and using

the land for a business purpose as required under AS 38.05.035(f).

**5.** *Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 175 (Alaska 1986); *see Longwith v. State, Dep't of Natural Res.,* 848 P.2d 257, 260 n. 5 (Alaska 1992) ("[T]he interpretation of the statutory requirements for the grant of preference

that is most persuasive in light of precedent, reason, and policy after considering the plain meaning of the statute, the legislative purpose of the statute, and the intent of the statute."[6]

## IV. DISCUSSION

### A. Plain Meaning And *In Pari Materia*

■ Gillis argues that AS 38.05.035(f)'s plain meaning does not require an applicant to enter land while it is under federal ownership to qualify for the preference right. According to Gillis subsection .035(f) fails to "stat[e] that entry under federal tenure is required whereas [it] does say that entry under a state use permit or lease is required." He asserts that subsection .035(f) "deals with federal permitting only and does not address the underlying land status." Gillis maintains that because he entered state land and otherwise met the conditions of subsection .035(f), he is eligible for the preference right.

We disagree. The plain language of AS 38.05.035(f) requires an applicant to have entered land while it was under federal ownership to qualify for the preference right. Subsection .035(f)'s crucial language is: "erected a building on the land and used the land ... under a federal permit or without the need for a permit and, after selection by the state, under a state use permit or lease." Because the federal government owned and adminis-

tered all land available for state selection, land remained under federal ownership until selected by the state.[7] The legislature's use of the conjunction "and," combined with the phrase "after selection by the state," indicates that the subsection applies to an applicant who, along with obtaining the necessary federal permits, erected a building on and used what was then federal land *and* continued using that land after state selection. Gillis's interpretation ignores the subsection's conjunction before the temporal requirement; his interpretation would be more appropriate if the statute said "*or*, after selection by the state" instead of "*and*, after selection by the state."

■ Gillis next argues that AS 38.05.035(f) should be interpreted *in pari materia* with the Alaska Land Act's other preference-right provisions.[8] Gillis asserts the legislature knew how to require federal tenure as an element for a preference right when it used the phrase "federal land subsequently acquired by the state" in AS 38.05.035(b)(3)[9] and provided for entry onto land "before January 3, 1959," the date of Alaska statehood, in AS 38.05.035(b)(5),[10] both enacted before subsection .035(f).[11] Gillis argues this language's absence from subsection .035(f) favors his interpretation.

Assuming these preference rights should be read *in pari materia*, we find Gillis's argument unpersuasive. The legislature employed inconsistent terminology to convey

---

rights does not involve agency expertise." (citing *Madison v. Alaska Dep't of Fish & Game*, 696 P.2d 168, 173 (Alaska 1985); *Kelly v. Zamarello*, 486 P.2d 906, 917 (Alaska 1971))).

6. *Bradshaw v. State, Dep't of Admin., Div. of Motor Vehicles*, 224 P.3d 118, 122 (Alaska 2010) (citing *Rubey v. Alaska Comm'n on Postsecondary Educ.*, 217 P.3d 413, 415 (Alaska 2009)).

7. *See generally* Alaska Statehood Act, Pub.L. No. 85–508, § 6(a), 72 Stat. 339, 340–43 (1958), *reprinted in* 48 U.S.C. ch. 2 (2006) (granting Alaska right to select "public lands of the United States in Alaska" for state land).

8. We generally construe statutes together, or *in pari materia*, when they are "enacted at the same time or deal with the same subject matter." *Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994).

9. AS 38.05.035(b)(3) provides in relevant part:

The director may ... grant a preference right to a claimant who shows bona fide improvement of state land or of federal land subsequently acquired by the state and who has in good faith sought to obtain title to the land but who, through error or omission ... has been denied title to it.

10. AS 38.05.035(b)(5) provides in relevant part:

The director may ... when the director determines it is in the best interest of the state and will avoid injustice to a person or the heirs or devisees of a person, dispose of land, by direct negotiation to that person who presently uses and who used and made improvements to that land before January 3, 1959, or to the heirs or devisees of the person.

11. Ch. 194, § 1, SLA 1968 (codified at AS 38.05.035(b)(5)); Ch. 58, § 1, SLA 1965 (codified at AS 38.05.035(b)(3)).

preference right conditions and temporal requirements, such as when it required actions on or to land before statehood or state selection.[12] We also distinguish subsection .035(f) from subsection .035(b)(3), which "grant[s] a preference right to a claimant who shows bona fide improvement of state land or of federal land subsequently acquired by the state." Subsection .035(b)(3) does not require the applicant to act before the state acquires federal land and uses the conjunction "or" before the temporal requirement. In comparison, subsection .035(f) does require an applicant to act prior to state selection and uses the conjunction "and" before the temporal requirement.[13]

We conclude that evaluating AS 38.05.035(f) in light of the above—mentioned preference rights supports interpreting the statute according to its plain meaning—an applicant must have entered the land while it was under federal ownership to qualify for the preference right.

## B.  Legislative History And Intent

On May 16, 1984, then-DNR Commissioner Esther Wunnicke testified before the House Committee on Finance regarding the proposed business preference right.[14] Wunnicke testified that DNR "was closely involved as the Senate Resources Committee developed the bill."[15] Wunnicke explained the proposed bill "provid[ed] for a new preference right that would provide an applicant . . .

with an assured right to state land."[16] Wunnicke hypothesized that an applicant would "usually [be] a sport hunting or fishing guide who has had a lodge on federal land that has come into state ownership."[17] Although "supportive of preference rights," Wunnicke expressed concern, due to timing and resource constraints, that the proposed bill would create "a new class of about 100 preference right applicants."[18]

Ten days later the legislature published a document explaining changes to the House of Representatives version of Senate Bill 375, the bill amending the Alaska Land Act and adding the preference right.[19] According to the document, the House's preference right language added six provisions: (1) a "5 acre parcel"; (2) the applicant "erected a building on the land"; (3) the applicant "used land for business purposes for 5 years under federal permit or without the need for a permit"; (4) the applicant "earned 25% of total income from the business"; (5) the applicant purchases the land at "fair market value"; and (6) DNR "may deny [the preference right] if [it] interferes with public use by residents."[20] The document noted that the preference right "would usually apply to hunting and fishing guides [and DNR] estimates 100 claimants statewide."[21] In early June 1984 the Senate Committee on Resources summarized the final version of Senate Bill 375, noting that it in part "[g]rants a preference

---

12.  *Compare* AS 38.05.035(b)(5) (allowing for disposal of land when it "is in the best interest of the state and will avoid injustice to a person . . . who presently uses and who used and made improvements to that land *before January 1, 1959* " (emphasis added)), *with* AS 38.05.820(a) (announcing state's policy "to allow preference rights for the acquisition of tide and submerged land occupied or developed for municipal business, residential or other beneficial purposes *on or before the date of admission of Alaska into the Union* " (emphasis added)).

13.  *Compare* AS 38.05.035(f) (granting "preference right to . . . an individual who has erected a building on the land and used the land for bona fide business purposes . . . under a federal permit or without the need for a permit and, after selection by the state, under a state use permit or lease"), *with* AS 38.05.035(b)(3) (granting "preference right to a claimant who shows bona fide improvement of state land or of federal land subsequently acquired by the state").

14.  Hearing on C.S.S.B. 375 Before the House Comm. on Fin., 13th Leg.2d Sess. (May 16, 1984) (testimony of Esther C. Wunnicke, Comm'r, Dep't of Natural Res.), *available at* Alaska Leg. Microfiche Collection no. 2863.

15.  *Id.*

16.  *Id.*

17.  *Id.*

18.  *Id.*

19.  Alaska State Legislature, S.B. 375, 13th Leg.2d Sess. (May 26, 1984), *available at* Alaska Leg. Microfiche Collection nos. 2858–59.

20.  *Id.*

21.  *Id.*

right to long-term landholders who have derived business income from the land." [22] On July 5, 1984, the Governor signed the bill and subsection .035(f) became effective one day later.[23]

▮▮▮▮ When examining legislative history we bear in mind that the statutory language's clarity places "a greater burden on ... the party seeking to dissuade us from giving the statute its apparent meaning." [24] But even when a statute appears facially unambiguous, we will examine the legislative history as it "may demonstrate that an ambiguity, although not apparent on the face of the statute, does exist with respect to the legislature's use of a particular term." [25] If the legislative history demonstrates no ambiguity, then this court adheres to the statute's language and will not modify or extend it by judicial construct.[26]

Gillis argues that Wunnicke's testimony is not probative of legislative intent and should not be afforded deference.[27] But Wunnicke's testimony and the subsequent consistent legislative documentation indicate subsection .035(f) was intended to provide a limited preference right to a small number of people who entered federal land that later came into state ownership. If subsection .035(f) constituted the general land disposal program Gillis argues for, we would expect a more thorough legislative debate about its scope and a much richer legislative history supporting Gillis's position. This limited legislative history does not create an ambiguity that would require us to deviate from subsection .035(f)'s plain meaning.

Gillis challenges the superior court's determination that AS 38.05.035(f) serves equita-

ble and remedial purposes as "unsupported or otherwise contradicted by extrinsic sources of legislative history," including Wunnicke's testimony and DNR's administration of subsection .035(f). Gillis contends the legislature did not intend subsection .035(f) to apply to federal land because the legislature enacted it 25 years after statehood. Gillis also criticizes the superior court for its "speculative conclusion" that without a requirement to enter federal land the subsection would create an "expanding class" of applicants for preference rights.

Gillis's arguments are unpersuasive. First, granting a preference right to applicants who legally constructed a building on and used federal land serves an equitable and remedial purpose—ensuring that those who did so would not lose their interest solely due to the land being transferred from federal to state ownership. Second, 1984 corresponds with the end of the 25–year period granted in the Alaska Statehood Act for the state to select federal land; therefore subsection .035(f)'s reference to federal land and land selected by the state is logical.[28] Third, we agree with the superior court that Gillis's interpretation of subsection .035(f), which does not require entry on federal land, would result in an ever-expanding class of applicants for preference rights contrary to the plain meaning and legislative history of subsection .035(f).

### C. DNR's Regulation And Decisions

Gillis argues that we should apply our independent judgment and not defer to 11

**22.** Sen. Comm. on Res., Final Version of S.B. 375, 13th Leg.2d Sess. (June 4, 1984).

**23.** Ch. 152, §§ 1–87, SLA 1984.

**24.** *State, Dep't of Natural Res. v. City of Haines*, 627 P.2d 1047, 1049 (Alaska 1981).

**25.** *Id.* at 1049 n. 6.

**26.** *Id.* (citing *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 635 n. 31 (Alaska 1979)).

**27.** Gillis also discounts an Attorney General letter to the Governor interpreting subsection .035(f) as requiring applicants to enter federal

land and recommending that the Governor sign the bill. *See* State of Alaska, Dep't of Law, Op. Att'y Gen., file no. 388–162–84 (July 3, 1984). The superior court, however, mentioned the letter only to note that others thought the statute was ambiguous; it did not rely on the letter to support its interpretation of subsection .035(f).

**28.** *See* Alaska Statehood Act, Pub.L. No. 85–508, § 6(a)-(b), 72 Stat. 339, 340–43 (1958), *reprinted in* 48 U.S.C. ch. 2 (2006) (requiring state to select land "within twenty-five years after the date of the admission of the State of Alaska into the Union").

AAC 67.053,[29] DNR's 1985 regulation implementing AS 38.05.035(f), because: (1) the regulation refers to "federal jurisdiction," which he argues is distinct from and broader than federal ownership; and (2) DNR did not adequately explain its previous denial of an application for a preference right.

We agree with Gillis that jurisdiction and ownership carry distinct meanings.[30] But the consistent and longstanding manner in which DNR has applied both its regulation and subsection .035(f) helps resolve any possible ambiguity in either the subsection or regulation. Although we agree with Gillis that we use our independent judgment, "we have recognized that an agency's interpretation of a law within its area of jurisdiction can help resolve lingering ambiguity, particularly when the agency's interpretation is longstanding."[31] DNR denied a request for a preference right in 1986 in part because the applicant failed to prove he entered federal land before state selection; DNR denied an informal request in 2008 for the same reason.[32] DNR's interpretation of subsection .035(f) and application of 11 AAC 67.053 span decades and support our plain meaning interpretation.

### D. Absurd Results

Gillis finally argues that interpreting AS 38.05.035(f) as requiring an applicant to enter federal land creates an absurd result "because no person would ever qualify for the preference right." Gillis concedes that requiring entry on federally owned land is not by itself absurd, but argues that when considering the legislative history and DNR's administration of the statute the result is absurd.

We disagree. We have recognized that "[i]n ascertaining the legislature's intent, we are obliged to avoid construing a statute in a way that leads to a glaringly absurd result."[33] Although an interpretation nullifying a statute can sometimes produce an absurd result,[34] interpreting this statute as requiring an applicant to have entered federal land, thereby limiting the number of eligible applicants, neither invalidates subsection .035(f) nor contradicts the legislative intent of providing a narrow preference right.

## V. CONCLUSION

We AFFIRM the superior court's interpretation of AS 38.05.035(f) and its summary judgment decision.

---

**29.** *See supra* text accompanying note 3.

**30.** "Jurisdiction" is defined as a "government's general power to exercise authority over all persons and things within its territory" and a "geographic area within which political or judicial authority may be exercised." BLACK'S LAW DICTIONARY 927–28 (9th ed. 2009). "Federal jurisdiction" is defined as "[t]he exercise of federal-court authority." *Id.* at 929. "Ownership" is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." *Id.* at 1215.

**31.** *Bartley v. State, Dep't of Admin., Teachers' Ret. Bd.,* 110 P.3d 1254, 1261 (Alaska 2005) (citing *Union Oil Co. v. State, Dep't of Revenue,* 560 P.2d 21, 23, 25 (Alaska 1977)).

**32.** In 1986 DNR denied the applicant a preference right under subsection .035(f) in part because he failed to provide written proof of "occupancy of the land before its selection by the state." In 2008 DNR denied an informal request for a preference right under subsection .035(f) in part because the potential applicant failed to provide written proof "that he had been using the site prior to the conveyance of th[e] land to the State."

**33.** *Sherbahn v. Kerkove,* 987 P.2d 195, 200–01 (Alaska 1999) (citing *Underwater Constr.,* 884 P.2d at 155 n. 21).

**34.** *See Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.,* 171 P.3d 1110, 1120 (Alaska 2007) (holding statutory interpretation that rendered statute "a nullity" created absurd result).