Mark **NODEN,** Appellant,

v.

**COMMERCIAL FISHERIES ENTRY COMMISSION, State of Alaska, Appellee.**

No. 6495.

Supreme Court of Alaska.

March 30, 1984.

---

Carolyn Lathrop, David B. Snyder, Steven Green, Alaska Legal Services Corp., Dillingham, for appellant.

Shelley J. Higgins, Sarah Forbes, Asst. Attys. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

This is an appeal from a superior court judgment affirming the denial, without hearing, of Mark Noden's application for a limited entry permit by the Commercial Fisheries Entry Commission (CFEC).

Noden raises two issues on appeal: (1) whether the Commission abused its discretion by failing to interpret a letter from him as a request for a hearing; and (2) whether he was inadequately provided with the right to a hearing in violation of the due process clauses of the Alaska and United States Constitutions.

We reject these challenges and affirm the judgment below.

### I

In 1973 the Alaska legislature passed the Limited Entry Act, AS 16.43.010–16.43.990, for the purpose of regulating and controlling entry into the commercial fisheries "in the public interest and without unjust discrimination."[1] Under the Limited Entry Act, the CFEC controls participation in commercial fisheries by requiring each operator of commercial gear to have an entry permit.[2] Entry permits are distributed to those applicants who were gear license holders prior to 1975 and who obtain the highest point totals for purposes of classification. These classifications indicate the relative hardship which applicants would suffer by exclusion from the fishery by weighing both past participation and economic dependence upon the fishery.[3]

In April 1975, nineteen-year-old Mark Noden submitted an application to the CFEC for a drift gill net permit in the Bristol Bay fishery. Noden claimed a total of twenty-six points for his past participation, between 1966 and 1972, as a gear license holder and as a crew member, for ownership of a vessel or gear, and for his income dependence on the fishery as a gear license holder.

Noden provided the CFEC with documents and prior fishing license numbers intended to verify his claims. Noden apparently had difficulty in completing the CFEC application: pre-printed points were written over and then scratched out, and the sub-totals and the total itself did not reflect the points claimed in each section of the ten page application.

The documentation did not satisfy the CFEC's requirements. In September 1975, the agency sent Noden a letter which indicated that some of the points claimed on his application could not be verified.[4] The CFEC letter concluded, "The instruction book supplied with your application tells you the evidence that must be submitted. Without evidence, points will not be verified."

On November 3, 1975, the CFEC sent Noden a classification notice which stated:

On the basis of your entry permit application ... we have determined that

---

1. AS 16.43.010(a).

2. AS 16.43.140.

3. AS 16.43.250(a).

4. The agency form letter sent Noden had the following notations: "The points you claimed cannot be verified because you did not submit proof for the following: .... X Crewman participation in *66–71* (years) ... X Ownership of vessel or gear ... X Income Dependence in *1972* year(s)...."
   A handwritten entry to the side of the above notations indicated: "We will need an affidavit from the skipper of the boat stating that you fished as a crewman on a drift boat and in which years. Please send repair, purchase, or barging bills to prove ownership on Dec. 31, 1972. Please sign and return the tax waiver so we can verify."

you are qualified for *11* points out of a maximum of 40. (See attached point determination sheet.)

If you disagree with this classification, you may request a hearing by writing the Commission stating what classification you should be in and which point determinations you feel are in error and why. YOUR RIGHT TO REQUEST AN ADMINISTRATIVE HEARING ENDS ON *December 18, 1975.* IF YOU DO NOT REQUEST A HEARING AND YOUR PERMIT APPLICATION IS EVENTUALLY DENIED, THERE WILL BE NO ADDITIONAL OPPORTUNITY TO REQUEST AN ADMINISTRATIVE HEARING.

Except for applicants with 20 or more points, permits will be issued only after all applications are received.

The attached point determination sheet indicated which point claims had been verified by the CFEC.

On December 9, 1975, a week before the deadline for requesting a hearing, Noden sent a letter to the CFEC. It stated, in its entirety:

Dear Sir,

In regards to your correspondence with me about my points, I never kept any records except in my memory, nor have I ever asked that any be kept for me by a cannery, or accountant, so I can't help you much in your requests for information.

I hope you understand.

Sincerely,

Mark H. Noden.

■ The CFEC did not consider Noden's letter to be a request for a hearing. In a letter dated December 17, 1975, a CFEC official wrote to Noden and informed him, "At this time the only way your additional points may be verified is through the sub-

mission of the additional information we requested on September 17, 1975."[5]

In February 1976, the CFEC wrote Noden that he was denied a drift gill net permit because of inadequate points. The letter also indicated that Noden's right to request a hearing had "expired."

In May 1978, Noden was notified that he had another opportunity "to submit evidence in support of additional point claims" on his entry permit application until July 1, 1978. Noden requested and received a time extension until September 1, 1978 to submit such evidence. Noden informed the Commission that he hoped to complete his application before September 1, 1978, but did not contact the CFEC again until one year later in October, 1979, when he once again sought assistance and reiterated his inability to collect written verification for his claimed points. The CFEC's "final action," from which this appeal was taken, was a detailed letter sent on October 10, 1979 in response to Noden's correspondence. The Commission explained the basis for the 1975 point classification and informed Noden that since his evidence submission deadline had passed over a year previous, no further action would be taken on his application. In conclusion, the letter stated:

For the purposes of exhaustion of administrative remedies this letter is the final action by this Commission on on [sic] your application. Under the Court Rules of Alaska, Appellate Rule 45 (enclosed), there is a 30 day period from the date on this letter to appeal this denial to a superior court....

■ Noden filed an appeal within 30 days to the superior court seeking an order directing the Commission to conduct an evidentiary hearing on his application. The superior court affirmed the CFEC's summary denial of Noden's application. This appeal followed.[6]

---

5. Appellant would also have this court find prejudicial error in the CFEC's letter of December 17, 1975 because that letter was dated the day before the hearing request deadline yet implied that the deadline had passed. We take judicial

notice of the delay in mailing and find that this was not an erroneous communication.

6. Preliminarily, the state argues Noden's failure to request a hearing in 1975 bars this appeal under the doctrine of exhaustion of administrative remedies. But Noden's alleged failure to

## II

■ Noden first contends the Commission abused its discretion by failing to interpret his letter of December 9, 1975 as a request for a hearing.[7] The classification notice informed Noden that he could request a hearing "by writing the Commission stating what classification you should be in and which point determinations you feel are in error and why" before December 18, 1975. Although Noden did write the Commission before December 18, his letter, while implying that he felt he was entitled to more points, did not present any basis for such entitlement. In effect the letter appeared more an acknowledgement that, based on the evidence before it, the Commission had awarded Noden the most points it could.

■ Commission regulations provide for the granting of an adjudicatory hearing upon the determination that a written request for a hearing demonstrates a "genuine issue in contention." 20 AAC 05.805(a). Noden failed to identify any such issue in his December, 1975 letter. Since Noden's letter did not state how he contested the Commission determination nor how he could present specific evidence to verify his point claims, it failed to raise any genuine issues of contention. If the Commission had responded to Noden's December 9 letter by inquiring further, as Noden suggests they should have done, they would essentially have been extending Noden's time period for requesting a hearing. This

would in effect grant Noden preferential treatment over other applicants who would be held to the 45 day time limit for requesting their hearings. Under these circumstances, we hold that the Commission correctly refused to consider Noden's December 9 letter as a request for a hearing.

## III

Noden also contends that he was inadequately provided with the right to a hearing in violation of the due process clauses of the Alaska and United States Constitutions. He alleges three constitutional infirmities. First, the November 3, 1975 classification notice inadequately informed Noden of what a hearing entailed. Second, the notice failed to specify the particular grounds for the decision denying points. Third, the hearing opportunity was not provided at a meaningful time.

The Commission acknowledges that Noden's interest in the application process is entitled to due process protection,[8] including the right to a hearing opportunity.[9] It contends, however, that the notification and timing of the hearing opportunity were sufficient to comport with due process.

Noden's first contention is that the November 3, 1975 classification notice provided insufficient information of what a hearing entailed. The parties agree that the constitutional requirement for notice is that it be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action...."[10]

request a hearing in 1975 will not bar access to judicial review where his primary contentions are that he was never given constitutionally adequate notice of such hearing opportunity and alternatively that he did in fact make a hearing request.

Nor need we consider the timeliness of Noden's appeal, since this is not questioned by the Commission.

7. It is appropriate that we substitute our judgment for that of the Commission to resolve this issue, since whether a hearing has been requested requires primarily a legal analysis which this court is at least as capable of performing as the agency. *See Kelly v. Zamarello,* 486 P.2d 906, 917 (Alaska 1971).

8. *Estate of Miner v. Commercial Fisheries Entry Commission,* 635 P.2d 827, 832 (Alaska 1981).

9. AS 16.43.260(c) provides:
   When an applicant is unable to establish qualifications for an entry permit by submitting the specific verified evidence required in the application by the commission, the applicant may request and obtain an administrative adjudication of the application according to the procedures established in AS 16.43.-110(b). At the hearing the applicant may present alternative evidence of qualifications for an entry permit.

10. *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed.

In the instant case it is undisputed that Noden received a notice which told him he could "request a hearing." While it may have been desirable from Noden's standpoint for the Commission to have fully explained that a hearing meant Noden could present oral testimony and be represented by a friend or counsel, the failure of the notice to elaborate on what a hearing consisted of does not make the notice constitutionally defective. The notice made clear that an initial determination had been made regarding Noden's application and that Noden was being provided with an opportunity to contest this determination. When viewed in its entirety, the notice was "of such nature as reasonably to convey the required information" [11] sufficient to meet due process requirements.[12]

Noden's second due process challenge to the November 3, 1975 classification notice is that it failed to adequately specify the particular grounds for the decision to deny additional points.

In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that a state could not, consistent with the requirements of procedural due process, terminate welfare benefits without first providing the recipient with a hearing. In discussing the type of notice required, the court noted that due process requires that a recipient have "adequate notice detailing the reasons" of the proposed administrative action. 397 U.S. at 267, 90 S.Ct. at 1020, 25 L.Ed.2d at 299.

The classification notice Noden received was accompanied with a point determination sheet. This sheet listed the points Noden had claimed and the corresponding points that had been verified. From a review of this sheet, it is apparent that Noden did not receive points for past participation prior to 1972 nor points for vessel ownership. Moreover, a letter sent to Noden in September 1975, several months before the classification notice, explained that these same points could not be verified and described the types of evidence Noden could submit to verify the claimed points.

Noden contends that the classification notice should have specified the reason the applicant was being denied certain claimed points. Yet the notice makes quite clear which claims were denied and that the reason for the denials was inadequate evidence for verification. Such notification of reasons is sufficient to comport with due process.

Noden's final due process challenge to the hearing opportunity is that it was not provided at a meaningful time. He argues that when the opportunity to request a hearing was given only at the classification stage it is not meaningful, since the applicant did not know at that time whether he would be denied a permit. He argues that the Commission should have waited until its initial process of ranking applicants was completed before sending out classification notices, as in this way applicants would have known whether they were in danger of losing their right to fish at the time for requesting a hearing. In essence, the hearing opportunity should have been provided when the denial of the permit became imminent. Instead of November 1975, Noden contends the hearing should have been

---

865, 873 (1950). *See also Aguchak v. Montgomery Ward Co., Inc.*, 520 P.2d 1352, 1356 (Alaska 1974) (adoption of *Mullane* language for analysis under Alaska constitution).

**11.** *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

**12.** The notice in this case was not deceptive, unlike the notice found constitutionally inadequate in *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352 (Alaska 1974). In *Aguchak,* indigent bush defendants were notified that they were required to appear personally in a distant forum to defend a small claims action, under pain of entry of default judgment. In fact, the defendants also had the option to file written pleadings. The failure of notice to inform the defendants of the option to file written pleadings made the notice constitutionally defective. In the instant case, the notice specifically informed Noden he had the right to a hearing. Although the notice did not elaborate on what a hearing entailed, unlike the notice provided in *Aguchak* it did not omit to inform Noden of the availability of the hearing alternative.

available in February 1976—three months later.[13]

The determination of whether due process is met by the provision of a hearing at the classification stage requires consideration of three distinct factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). *City of Homer v. State, Department of Natural Resources*, 566 P.2d 1314, 1319 (Alaska 1977).

We recognize that an applicant's interest in the permit application process is important.[14] But we find that this interest would not be subject to a substantially greater risk of erroneous deprivation under the procedures used than if the hearing opportunity was delayed. Noden contends that since he was not informed of the probable denial of a permit at the time of classification, he would have less incentive to assert the hearing right. *Mathews v. Eldridge*, 424 U.S. at 333–34, 96 S.Ct. at 901–02, 47 L.Ed.2d at 32, and *Goldberg v. Kelly*, 397 U.S. at 266–71, 90 S.Ct. at 1019–22, 25 L.Ed.2d at 298–301, both focused on the timing of the hearing opportunity. But these cases centered on whether a hearing after termination of benefits was constitutionally adequate or if instead a pretermination hearing was required. In contrast, Noden is contending that the hearing opportunity was provided too early. Unlike the situation facing recipients of social security or welfare, Noden was not deprived

of anything prior to his opportunity to request a hearing. He was provided the full opportunity to contest the Commission's point determination prior to any loss of the right to fish.

While a hearing opportunity when denial was imminent may have prompted Noden to view his situation more seriously, the classification notice sufficiently informed Noden that there was a potential deprivation. He was informed that he was classified with eleven points, and that only applicants with twenty or more points would be issued a permit immediately. Such information raised the clear implication that Noden would improve his chances if he obtained more verified points.

Moreover, the state's interest in providing for a hearing opportunity at the classification stage rather than at the denial stage is quite compelling. The necessity for holding administrative hearings at the classification stage can best be explained by an outline of the mechanics of the Limited Entry Act. The Act requires that permits issued for individual fisheries not exceed a predetermined "maximum number" for that fishery. AS 16.43.240. Permits are to be issued to those applicants who, relative to their competitors for that particular fishery, will suffer more hardship by being subsequently excluded from that fishery. AS 16.43.270. To rank individuals according to relative hardship, the Commission devised a point system. *See Younker v. Alaska Commercial Fisheries Entry Commission*, 598 P.2d 917 (Alaska 1979).

For the Bristol Bay drift gill net fishery, applicants who were awarded 20 or more points were classified as suffering "significant hardship" by exclusion from the fishery, and automatically received permits. *See* AS 16.43.270(a); 20 AAC 05.640(a). However, there were more available permits than applicants who were awarded 20

---

**13.** In the instant case, we are addressing only the timing of the hearing opportunity for the initial classification of applicants. As we recognized in *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236 (Alaska 1984), the Limited Entry Act required another hearing opportunity for applicants who timely submitted additional evidence in 1978 pursuant to Commission regulations.

**14.** *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1267 (Alaska 1980); *Isakson v. Rickey*, 550 P.2d 359 (Alaska 1976).

or more points. *See* AS 16.43.240. In awarding the "residue" of permits, the Commission was required to grant permits "in order of descending priority classification;" that is, first to persons with 19 points, then 18, and so on. AS 16.43.270(a). Before the Commission could award any permits to persons with fewer than 20 points, it needed to know the final point totals of all applicants. Until that was known, the Commission could not determine at what point level permits could be issued without exceeding the maximum number. Therefore, following the close of the application period, the Commission classified all applicants—as it did Noden on November 3, 1975.

At the time of the classification, applicants were given 45 days to contest the determination and request a hearing. 20 AAC 05.805(b)(1). If the classification was not contested, that applicant's point total remained established at the level stated in the classification notice. If the classification was contested, the applicant became part of a pool of applicants under AS 16.-43.270(c). Essentially, the legislature required the Commission to "reserve" a permit for those applicants who timely requested adjudicatory hearings (and thereafter judicial review), on the assumption that they would receive sufficient points after pursuit of their remedies to receive a permit. AS 16.43.270(c).

Under the system as it was intended to function, 45 days after the classification of all applicants the Commission knew two things: (1) the point classification of all applicants who had not requested adjudicatory hearings, and (2) the number of persons who requested hearings for whom permits must be reserved. The level of points for issuance of permits could then be established. To the extent those persons who requested hearings are unsuccessful in getting enough points for a permit, section 270(c) requires that "the remaining entry permits shall be allocated to the next most qualified applicants."

Under the system as outlined, allowing applicants to contest their point determina-

tions at the time of permit issuance could wreak havoc. No issuance level could ever have been firmly established; as soon as an issuance level was established, additional applicants could contest their point determinations, and, if successful, require either a change in the issuance level or issuance of permits in excess of the "maximum number."

The provision for a hearing after classification is an essential component of the Commission's procedures for effectively carrying out the Act's purposes. We do not see how delaying the hearing opportunity in the manner Noden proposes would have effectuated the Act's purposes. Nor does limiting the hearing opportunity to the classification stage create an unacceptable risk of erroneous deprivation of Noden's rights. We therefore conclude that the provision for a hearing at the classification stage sufficiently comports with the requirements of due process.

For the foregoing reasons, the decision of the superior court is AFFIRMED.